UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>TIMOTHY JOSEPH GRANT,<br>                              Debtor.<br>PELLON LAY,<br>                              Plaintiff,<br>v.<br>TIMOTHY JOSEPH GRANT,<br>                              Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 20-cv-02465-DMS (JLB)<br><br>**ORDER DENYING PLAINTIFF/COUNTERCLAIM DEFENDANT PELLON LAY'S MOTION FOR PROTECTIVE ORDER RE: PSYCHIATRIC AND PSYCHOLOGICAL TREATMENT AND MENTAL HEALTH COUNSELING RECORDS**<br><br>**[ECF No. 49]** |

Before the Court is a Motion for Protective Order re: Psychiatric and Psychological Treatment and Mental Health Counseling Records filed by Plaintiff/Counterclaim Defendant Pellon Lay ("Lay"). (ECF No. 49.) Lay requests that the Court issue a protective order directing that Lay's psychological and psychiatric treatment and mental health counseling records (collectively, "mental health records") not be produced directly to Defendant/Counterclaim Plaintiff Timothy J. Grant ("Grant"). (*Id.* at 6.) Instead, Lay

1

requests that the Court order the appointment of a discovery referee/special master ("special master") to review Lay's mental health records and recommend an appropriate resolution and require Lay and Grant to each be responsible for one half of the cost of this appointment. (*Id.*) Grant opposes the motion. (ECF No. 50.) Lay filed a reply. (ECF Nos. 51; 52.) For the reasons set forth below, the Court **DENIES** Lay's Motion for Protective Order.

I. BACKGROUND

    A. Procedural Background

On or about April 3, 2020, Grant filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of California, Case No. 20-01895-LT7. (ECF No. 16 ("Compl.") ¶¶ 1, 5.) The present dispute was initiated by Lay on June 12, 2020, when he filed an adversarial complaint for non-dischargeability of debt in Grant's bankruptcy case, which was assigned Adversary No. 20-90082-LT. (*Id.* ¶ 1.) Lay filed suit for willful and malicious injury stemming from a 2019 incident between the parties that occurred at a Mobil gas station in San Diego, California. (*Id.* ¶¶ 6–20.)

On December 18, 2020, the parties stipulated and jointly moved to have the adversary proceeding transferred to U.S. District Court for a trial on Lay's personal injury tort action pursuant to 28 U.S.C. §§ 157(b). (ECF No. 1.) Thereafter, the matter will be returned to the Bankruptcy Court for further proceedings regarding dischargeability under 28 U.S.C. § 523(a)(6). (*See* ECF No. 4 at 1.) The Honorable Dana M. Sabraw granted the parties' joint motion on February 10, 2021. (*Id.* at 1–2.)

    B. Factual Background[1]

The incident took place on November 7, 2019, as the parties were emerging from the car wash at a Mobil gas station. (Compl. ¶ 6; *see also* ECF No. 18 ¶ 12.) When Lay

---

[1] Except as otherwise noted, the following allegations are taken from Lay's Complaint.

began to exit the car wash, he found he could not leave because Grant was blocking the exit. (Compl. ¶ 7.) Lay honked his horn, but Grant did not respond. (*Id.*) Eventually, Lay exited his car and approached Grant to ask him to move his car. (*Id.* ¶ 8.) Grant, who was texting on his mobile phone, "responded with a barrage of abusive language, threatening harm to Lay." (*Id.* ¶¶ 8–9.) Grant then exited his car and "struck [Lay] with a metal steering wheel security arm bar." (*Id.* ¶ 10.) Grant chased Lay through the car wash parking lot and hit him on his "face, head, neck, shoulders, and about his body." (*Id.* ¶ 11.) Lay was left bleeding and had a cut behind his left ear. (*Id.* ¶ 12.) His head/neck area was also bruised and became swollen and painful. (*Id.*) Lay required medical care, including numerous stitches to close the open wounds on his head. (*Id.*) Two car wash employees prevented Grant from leaving the scene and the San Diego Police Department arrived in response to a 911 emergency call. (*Id.* ¶ 13–14.)

As a proximate result of the acts and omissions of Grant, Lay alleges: (1) that he was injured and has received and continues to receive medical care for his injuries, which may lead to some permanent disability to him and residual damages (*id.* ¶ 16); (2) that he sustained, and will sustain, special damages consisting of medical bills and related healthcare expenses (*id.* ¶ 17); (3) that he "suffered general damages, pain and suffering, interruption of the enjoyment of life, and emotional distress" (*id.* ¶ 18). In his prayer, Lay seeks, *inter alia*, punitive damages. (*Id.* at 4.)

On July 9, 2020, Grant, proceeding *pro se*, filed an Answer and Counterclaim in Bankruptcy Court. (ECF Nos. 17; 18.) Grant brought claims against Lay for battery, assault, intentional infliction of emotional distress, and negligence related to the incident at the gas station car wash. (ECF No. 18 ¶¶ 74–102.) Grant alleges that while he was still seated in his car, Lay approached him, berated him, and then punched him in the face with his left fist "without warning or provocation." (*Id.* ¶¶ 19–25.) He further alleges that he struck Lay with the metal steering wheel security arm bar or "club" in self-defense. (*Id.* ¶¶ 39–44.) Grant alleges that after the incident he was arrested on the charge of assault with a deadly weapon. (*Id.* ¶ 53.) Grant alleges he suffered injuries to his ear and neck for

which he was subsequently treated on two occasions at Urgent Care. (*Id.* ¶¶ 57–59.) Grant further alleges that the blow to the face "and the resulting concussion" triggered some or all of his "current psychological issues and the consequent need for [] psychological treatment, resulting in [his] stopping work due to the medical disability." (*Id.* ¶¶ 61–69.)

In February 2020, Grant entered a guilty plea to the felony charge of assault with a deadly weapon (Cal. Pen. Code § 245(a)(1)), "including the admitted 'personal use of a dangerous or deadly weapon'" (*id.* § 11927(c)(23)) in *People v. Timothy Joseph Grant*, Case No. SCD284113 (San Diego Superior Court). (ECF No. 18 ¶¶ 63–64.) As a result of his felony conviction, Grant, who is a California attorney, had his license to practice law suspended on an interim basis by the California State Bar on November 3, 2020. (ECF No. 29 at 2.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that parties:

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under Rule 26, relevancy alone is not sufficient to obtain discovery. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. Discovery must also be proportional to the needs of the case. *Doherty v. Comenity Cap. Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Mora v. Zeta Interactive Corp.*, No. 1:16-cv-00198-DAD-SAB, 2017 WL 1187710, at *3 (E.D. Cal. Feb. 10, 2017)). Rule 26 requires that courts "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Regardless of its broad nature, however, relevancy is not without "ultimate and necessary boundaries." *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

A party may serve on any other party requests for production of documents or tangible things within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). In response to a request for production, a party must either: (1) produce the requested document; (2) indicate that the requested document is not in the party's "possession, custody, or control"; or (3) object and include the reasons for the objection. Fed. R. Civ. P. 34(a)(1), (b)(2)(B). "The responding party has an obligation to conduct a reasonabl[e] inquiry into the factual basis of its responses to the request to produce documents." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009). If the responding party does not offer a valid objection, it must produce all requested documents that are in its possession, custody, or control. Fed. R. Civ. P. 34(a)(1), (b)(2)(C).

Because "pretrial discovery by depositions and interrogatories has a significant potential for abuse," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), district courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1). Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Robinson v. Chefs' Warehouse*, No. 3:15-cv-05421-RS (KAW), 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (citing *Seattle Times Co.*, 467 U.S. at 36); *see also Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002). District courts may, among other things, forbid discovery, specify the terms for discovery, forbid inquiry into certain matters, or limit the

scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (B), and (D). "The burden is upon the party seeking the [protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(c)).

## III. DISCUSSION

### A. Parties' Arguments

#### 1. Lay's Arguments

Lay argues that the release of his "sensitive and highly personal" mental health records directly to Grant would have a "harmful and deleterious effect" on him without appropriate protections and limitations against their use and dissemination. (ECF No. 49 at 3.) Lay contends that he has "suffered serious emotional distress, fear, anxiety, and post-traumatic stress" as a result of Grant's attack, and his marital and family relationships have been "seriously impacted." (ECF No. 49-3 ¶¶ 2, 7.) Lay is concerned that the production of his mental health records would lead to re-victimization, further traumatization, and humiliation, as well as slow, impede, or reverse his healing process. (ECF No. 49 at 3–4.) Lay also fears that Grant will attack him or his family and cause him great bodily harm or injury. (ECF No. 49-3 ¶ 6.) Lay points to Grant's alleged admission that he has issues with "anger management" and Grant's constant objections to Lay's pleadings, discovery, and communications with counsel, apparently as the basis for this fear. (ECF Nos. 49 at 3–4; 49-2 ¶¶ 4–5.) Lay is further concerned about "the potential for abusive use of" his mental health records. (ECF No. 49 at 5.) Lay points to Federal Rule of Civil Procedure 11, and Sections 128.5(d) and 128.7(f) of the California Code of Civil Procedure as legal authority recognizing "the need to protect victims of [assault] from further harm and re-victimization." (*Id.* at 3.)

Lay contends that he "recognizes that the need for his protection must be balanced against [Grant's] discovery rights." (*Id.* at 4; *see also* ECF No. 51 at 2.) He suggests submitting his mental health records to a special master "for review and determination how they may best be produced balancing the parties['] needs." (ECF No. 49 at 4.) Lay is

willing to pay half the cost of hiring a special master but contends that Grant has refused to pay the other half. (*Id.*) Lay argues that it is only equitable to require Grant to pay half the cost because the "need for such intervention is predicated on Grant's conduct." (*Id.*) Lay disputes Grant's contention that he is unable to pay this cost. (ECF Nos. 51 at 2–3; 52 at 2.) Lay is also agreeable to submitting his mental health records to the undersigned judge for an *in camera* review. (ECF No. 49 at 5.)

    2.  Grant's Arguments

Grant asks that the Court deny Lay's motion for a protective order. (ECF No. 50.) He argues that Lay has not identified any applicable privilege, either in the privilege log served with his discovery responses or in his motion for protective order. (*Id.* at 5–6, 12; *see also* ECF No. 50-2 at 2, 7–8.) Grant further argues that Lay already has ample protections in place to protect against the abuse or dissemination of his mental health records. (ECF No. 50 at 6–7.) Grant points to the Protective Order issued in this case and the Criminal Protective Order issued in the related state court criminal case. (*See* ECF Nos. 48; 50 at 7; 50-2 at 3–4.)

The Protective Order issued in this case allows Lay to designate records as "Confidential" or "Confidential—For Counsel Only."[2] (ECF No. 48 ¶ 4.) All documents so designated must not be disclosed by the receiving party to anyone other than those persons designated in the Protective Order and must not be used for any purpose other than

---

  [2]  In the Protective Order drafted by the parties and adopted by the Court upon a joint motion, the parties recognized that Grant was proceeding *pro se* and yet provided that a party may designate mental health records as "Confidential—For Counsel Only." (ECF No. 48 ¶¶ 3, 4.) The parties endeavored to reconcile this seeming conflict by further providing: "With regard to any Psychological or Medical and Psychological/Psychiatric records of Plaintiff/Counterclaim Defendant, said records shall not be produced absent written agreement by the parties, review by discovery Referee, Review by the Magistrate Judge or by Court Order." (*Id.* ¶ 4(b).) Thus, the parties specifically anticipated putting the determination of the production of these documents into the hands of the Court.

in connection with this litigation. (*Id.* ¶ 7.) In addition, such documents must be handled in accordance with the Protective Order. (*Id.*)

The Criminal Protective Order issued in *People v. Timothy Joseph Grant*, Case No. SCD284113 (San Diego Superior Court),³ dated January 13, 2021, provides that Grant "must not harass, strike, threaten, assault (sexually or otherwise), follow, stalk, molest, destroy or damage personal or real property, disturb the peace, keep under surveillance, or block movements" of Lay. (ECF No. 50-2 at 3, ¶ 6.) The Criminal Protective Order also provides that Grant "must have no personal, electronic, telephonic, or written contact" with Lay and that he must not come within 100 yards of Lay, with the exception of some court proceedings or court depositions. (*Id.* at 3, ¶¶ 11, 13.) Grant must also stay away from Lay's home, employment, school, and vehicle. (*Id.* at 3, ¶ 16.) The Criminal Protective Order expires on January 13, 2024. (*Id.* at 3.)

Grant contends that any willful violation of the terms of the Criminal Protective Order would amount to a violation of his two-year probationary period and likely result in the loss of his liberty/imposition of the suspended sentence of six months in custody. (ECF No. 50 at 7; *see also* ECF No. 50-1 at 2.) Grant further contends that any violation would also likely result in further discipline from the California State Bar. (ECF No. 50 at 7; *see also* ECF No. 50-1 at 2.)⁴ Grant adds that in his more than thirty-year career as an attorney he has "never been held in contempt, nor had any monetary, discovery, nor issue preclusion

---

³ The Court grants the request to take judicial notice of the Criminal Protective Order (ECF No. 50-2 at 1–4) filed by Grant in support of his opposition. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record"). Grant avers, and the Court has no reason to question, that it is a true and correct copy of an order issued by the California Superior Court. (ECF No. 50-2 at 2.)

⁴ Grant represents that his bar license is "currently on interim suspension for the underlying felony conviction for assault with a deadly weapon, which the State Bar already has determined does not present a crime of moral turpitude." (ECF No. 50-1 at 3.) He expects his license "to be reinstated by the State Bar by the end of [2021], perhaps sooner." (*Id.*)

sanctions imposed against [him] for any purported misconduct." (ECF No. 50 at 7; *see also* ECF No. 50-1 at 3.) Thus, he argues that there is no "valid evidence" that he has any sort of propensity or desire to repeat the sort of behavior that got him into this predicament in the first place. (ECF No. 50 at 7.)

Grant further argues that Federal Rule of Civil Procedure 11 and Sections 128.5(d) and 128.7(f) of the California Code of Civil Procedure do not support Lay's request for a protective order under the present circumstances. (*Id.* at 9–11.) He also questions how the requested protection would prevent the feared attacks and reprisals by him, noting the lack of connection between Grant reviewing Lay's mental health records and Lay's safety. (*Id.* at 11.)

Lastly, Grant argues that he needs to personally review Lay's mental health records in order to assess:

> (a) the nature and extent of the severe emotional distress claims presented; (b) the nature and extent of therapy and prognosis to date; (c) the extent other identified unrelated life stressors are impacting LAY's mental state; (d) whether or not to retain an expert psychologist, psychiatrist, or both; (e) whether or not an order compelling LAY's mental examination should be sought; and (f) the nature and extent of questions to be put to LAY and his treating or forensic experts in deposition or trial on the issue of severe emotional distress.

(ECF No. 50-1 at 3.) He contends that "[a]n outcome of [his] not being able to personally review LAY's mental health records would render it near[ly] impossible for [him] to effectively examine [Lay] or [Lay's]' treating and forensic experts during deposition or trial on the mental distress claims which are at the very crux of LAY's claim for damages." (*Id.*)

Grant has "no desire" to utilize a special master "to resolve this purely legal issue of the Plaintiff's duty to disclose to the opposition all relevant mental health records when a claim of severe emotional distress has been made." (ECF No. 50-1 at 4.) Grant is mindful of litigation costs because he is "insolvent" and living on disability, with significant debt load and limited assets or income, and claims he would be unduly prejudiced if he were

required to retain a special master or expert. (ECF Nos. 50 at 12; 50-1 at 4.) However, Grant is open to a special master if Lay pays all of the costs. (ECF No. 50-1 at 4–5.) Grant is also amenable to initially reviewing but not copying Lay's mental health records in order to first determine whether they contain any pertinent information, because if they do not, this whole dispute would be rendered moot. (*Id.* at 5.)

### B. Analysis

Lay does not dispute the relevance of his mental health records.[5] Rather, he seeks a protective order that, in practical effect, prevents Grant from obtaining these records in discovery. For the reasons set forth below, Lay has failed to demonstrate good cause for a protective order precluding the production of his mental health records directly to Grant.

As Grant noted, Lay has not asserted any privilege in a privilege log preventing the disclosure of his mental health records. (*See* ECF No. 50-2 at 2, 7–8.) For example, he has not asserted the psychotherapist-patient privilege, which generally covers confidential communications between a psychotherapist and her patients. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996); Cal. Evid. Code § 1014. Presumably, this is because Lay recognizes that he has waived that privilege under both state and federal law by seeking compensatory damages for injuries to his emotional health. *See, e.g.*, Cal. Evid. Code § 1016(a) ("There is no [psychotherapist-patient] privilege . . . as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by . . . [t]he patient[.]"); *In re Lifschutz*, 2 Cal. 3d 415, 435 (1970) (there is no psychotherapist-patient privilege "with respect to those mental conditions the patient-litigant has disclosed by bringing an action in which they are in issue" (citation and internal alterations and quotation marks omitted)); *see also Doe v. City of Chula Vista*, 196 F.R.D. 562, 568–69 (S.D. Cal. 1999) (finding that the plaintiff waived the federal psychotherapist

---

[5] It appears Grant is only seeking the mental health records related to the treatment Lay received "as a result of" the incident at issue in this case. (*See* ECF No. 50-2 at 12.)

patient privilege by seeking compensatory damages for injuries to her emotional health); *Williams v. Cnty. of San Diego*, No. 17CV815-MMA (JLB), 2019 WL 1499597, at *6 (S.D. Cal. Apr. 5, 2019) (same). Here, Lay seeks damages, including punitive damages, for the "pain and suffering, interruption of the enjoyment of life, and emotional distress" he incurred as a result of Grant's actions. (Compl. at 3–4.) Lay claims that he has suffered "serious [and severe] emotional distress, fear, anxiety, and post-traumatic stress" as a result of Grant's attack on November 7, 2019. (ECF No. 49-3 ¶¶ 2, 5.) Thus, Lay has put his emotional health at issue in this case.[6]

As Lay's mental health records are relevant and no privilege has been asserted, either in a privilege log or in this motion, Lay's argument for a protective order rests on his concerns about safety, the additional emotional distress producing the documents would cause, and the potential for abuse or misuse of the documents.[7] Although the Court is sympathetic to all of Lay's concerns, Lay does not propose a workable solution to the Court. Lay has put his mental health at issue in this case and Grant is entitled to the requested documents in order to put forth a robust defense. As Lay is seeking emotional distress and punitive damages, the judgment against Grant, if Lay prevails, could conceivably be significant. In defending himself, Grant may, among other things, need to take Lay's deposition, depose Lay's expert, file or oppose a dispositive motion, and cross-examine Lay and/or his expert at trial on the issue of damages. Lay has not explained how

---

[6] As Lay does not contest the relevance of his mental health records and does not assert any privilege over them, the Court declines his offer to review the documents *in camera*. Lay has not explained what the Court would be reviewing the documents for or how a review of the documents, whose relevance is not contested, would aid the Court in answering the question of whether the documents should be withheld from production based upon Lay's asserted fear of Grant.

[7] In his declaration, Lay states that the release of his mental health records would have a "harmful and deleterious effect on [him] and heighten [his] fears for [his] safety and that of [his] family." (ECF No. 49-3 ¶ 4.)

Grant could undertake the components of these activities that turn on Lay's mental health records without himself having those records.

Lay has proposed that the Court appoint a special master, and order Grant to pay half the cost. Per Lay's proposal, the documents would be submitted to the special master "for review and determination how they may best be produced balancing the parties['] needs." (ECF No. 49 at 4.) Lay would like for the special master to "review said records and recommend an appropriate resolution of this dispute." (*Id.* at 6.) This proposal suffers, in part, from the same flaw as the proposal for an *in camera* review by the Court. Specifically, Lay does not suggest how the special master's potentially very expensive review of his mental health records—the relevance of which is not in dispute—might aid in the resolution of the fundamental tension between Grant's need to use the documents to mount his defense and Lay's concerns about his emotional and physical vulnerability. Where neither the parties nor the Court have been able to conceive of a practical compromise that would provide further comfort to Lay without depriving Grant of the tools he needs to defend himself, what is the basis for expecting that a special master would be able to do so?[8] And to the extent Lay anticipates that the special master would not merely be able to divine a solution but rather would be the solution himself, Lay has not offered any suggestions[9] as to what the special master's role would be in this case.[10] Despite the

---

[8] "[A] court may appoint a master only to . . . address pretrial . . . matters that *cannot* be effectively and timely addressed by an available . . . magistrate judge." Fed. R. Civ. P. 53(a)(1)(C) (emphasis added).

[9] In a previous telephonic conference, it was suggested that the special master, rather than Grant, might be the holder of the mental health records on Grant's behalf. This option would presumably entail the special master sitting with Grant through depositions, motions drafting, trial preparation, and trial, temporarily handing Grant documents on an as-needed basis. This does not seem to be a practical solution and Lay does not suggest it in this motion.

[10] Any court order appointing a special master "must state," *inter alia*, "the master's duties, including any investigation or enforcement duties, and any limits on the master's authority." Fed. R. Civ. P. 53(b)(2).

Court's best efforts, it simply cannot see how involving a special master does anything more than add expense and unnecessarily delay the decision about the production of these documents.

Having given serious consideration to the issues here, the Court concludes that there are already adequate orders in place to protect Lay. The Protective Order in this case, as well as the Criminal Protective Order issued in Grant's criminal case, address Lay's concerns about safety and the potential abuse or misuse of his mental health records. There are penalties, including potentially severe ones, if Grant does not comply with these court orders. (*See* CivLR 83.1; ECF No. 50-2 at 3.) Moreover, the Court does not see how permitting Grant to obtain Lay's mental health records puts his safety further at risk. To the extent Lay's "personal information not otherwise relevant to this action such as phone numbers, home addresses, social security numbers, driver's license numbers" are included, the parties have already agreed in the Protective Order that they are "confidential and privileged from production or discovery." (*See* ECF No. 48 ¶ 4(b).) Lay may also redact the personal information of family members or third parties, to the extent that information is not relevant to this action. If, after review of the documents, there are additional, specific concerns Lay has about identifying or locating information contained within his mental health records, he may raise those specific concerns with the Court.

## IV. CONCLUSION

For the foregoing reasons, Lay's motion for protective order regarding his mental health records is **DENIED**.[11] As Lay must have the opportunity to review and redact personal information from his mental health records prior to production, the Court declines Grant's request to enter an order similar to the one used in the U.S. District Court in New Mexico. (*See* ECF No. 50 at 13–14.) Rather, Lay shall obtain and produce to Grant his

---

[11] This denial does not preclude the parties from agreeing to refer the matter to a discovery referee at Lay's expense.

mental health records responsive to Grant's request(s) for production within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated: July 9, 2021

_Jill Burkhardt_
Hon. Jill L. Burkhardt
United States Magistrate Judge